UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROY AUSTIN SMITH, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>EVELYN RIDLEY-TURNER, *et al.*, )<br>)<br>Defendants. ) | CAUSE NO. 3:05 CV 0047 |

## OPINION AND ORDER

Roy Smith, a prisoner confined at the Indiana State Prison ("ISP"), submitted a complaint under 42 U.S.C. § 1983 alleging that Indiana Department of Correction ("IDOC") Commissioner Evelyn Ridley-Turner and ISP officials Cecil Davis and Charles Whelan violated his federally protected rights. The court must review the merits of a prisoner complaint seeking redress from a governmental entity or officer or employee of a governmental entity, and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. Courts apply the same standard under § 1915A as when addressing a motion under Fed. R. Civ. P. 12(b)(6) to dismiss a complaint. *Weiss v. Colley*, 230 F.3d 1027, 1029 (7th Cir. 2000).

> A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, pro se complaints are liberally construed.
> 
> In order to state a cause of action under 42 U.S.C.§ 1983, the Supreme Court requires only two elements: First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim

> showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

Mr. Smith alleges that on March 19, 2003, prison officials placed him in pre-hearing segregation in the ISP's Special Management Unit ("SMU") for stabbing another inmate. He remained on the SMU for nine days, and then was transferred to another segregation unit, still on pre-hearing segregation status. The prison disciplinary board found him guilty of the stabbing, sentenced him to one year in disciplinary segregation, and reduced him to a lower credit time earning classification. The prosecutor subsequently charged him with attempted murder, and he was convicted of that charge. Upon his release from disciplinary segregation, ISP officials placed him in administrative segregation, where he remains.

Mr. Smith brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984). To state a claim under § 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42 (1988). The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

In Count I of his complaint, Mr. Smith alleges that the defendants violated rights protected by the Fourteenth Amendment's due process clause by placing him in the Special

Management Unit immediately after they took him into custody for the stabbing, instead of putting him in the unit generally used for pre-hearing segregation. The Fourteenth Amendment's due process clause, however, does not protect against every change in the conditions of confinement having a substantial adverse impact on a prisoner, *Sandin v. Conner*, 515 U.S. 472, 484 (1995), and that ISP officials may have placed Mr. Smith in a segregation unit other than the one they usually use for pre-hearing segregation states no claim upon which relief can be granted.

In Count II and Counts IV through IX of his complaint, Mr. Smith alleges that conditions on the Special Management Unit violated the Eighth Amendment's prohibition against cruel and unusual punishments. In Count II, Mr. Smith states that the cells were small with "severely restrictive living and bed space," (Complaint at p. 5); in Counts IV and V, he alleges that the defendants placed the control to the water and light in the SMU cells outside the cell; in Count VI, he alleges that ventilation in the unit was inadequate; in Count VII, he alleges that he was denied access to various hygiene materials; in count VIII he alleges that he only received two meals a day, served in sacks; and in Count IX, he alleges that he received no out of cell recreation.

The Constitution "does not mandate comfortable prisons," and only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation."*Wilson v. Seiter*, 501 U.S. 294, 298 (1991), quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, (1981). If some of the conditions on the SMU were as Mr. Smith describes them, long-term confinement there might support an Eighth Amendment claim. But conditions that would violate the Eighth Amendment over a long period of time may not constitute a constitutional violation if imposed for short

3

periods of time. *See Jones-Bey v. Wright,* 944 F.Supp. 723, 732 (N.D. Ind. 1996). Confinement in the SMU for nine days under the conditions asserted in Count II and Counts IV through IX of his complaint states no Eighth Amendment claim.

In count III of his complaint, Mr. Smith alleges that the defendants violated his Fifth Amendment right not to be compelled to be a witness against himself by placing him in "a coercive environment on the S.M.U. and compelled plaintiff to make a statement concerning the stabbing incident." (Complaint at p. 51). Placement of a convicted prisoner in an administrative segregation unit, no matter how restrictive, does not violate the Fifth Amendment's ban against self-incrimination. Prison disciplinary hearings are not criminal proceedings, and the Fifth Amendment has no direct application to them, but if inmates are compelled in these proceedings to furnish testimonial evidence that might incriminate them in later criminal proceedings, they must be offered whatever immunity is required to support the privilege and may not be required to waive such immunity. *Baxter v. Palmigiano,* 425 U.S. 308. 318 (1976).

Mr. Smith does not allege that the statement he says he gave to prison officials was used in his criminal trial. If the statement was not used, there are no Fifth Amendment implications. But even if his statement was used at trial, Mr. Smith may not assert any claim arising from the use of his statement in this case because if the remedy sought under § 1983 would require a finding or judgment that would render a conviction or sentence invalid, the § 1983 plaintiff must first "prove that the conviction was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994). Mr. Smith does not assert that his conviction has been overturned; indeed, he affirms that he is still in prison on this

4

conviction. To conclude that Mr. Smith was improperly convicted of a crime because of an inadmissible statement he gave to prison officials would require a finding or judgment that his conviction is invalid.

In Count X of his complaint, Mr. Smith alleges that he was denied access to the ISP law library or inmate law clerks for the nine days he was confined in the SMU; in Count XIII, he alleges that he was denied access to the law library while he was in disciplinary segregation, and in Count XXI, he alleges that he was denied access to the law library when he was in administrative segregation. ISP prisoners who are confined in any segregation unit may not personally go to the law library, and are not allowed to use "typewriters and other legal aids located in the prison's law library . . . [which] . . . prevent[s] plaintiff from filing legible written and neatly typed legal documents." (Complaint at p. 58).

A prisoner's right to access to the courts does not include a federally protected right to use a typewriter or to have his materials typed. *Twyman v. Crisp*, 584 F.2d. 352 (10th Cir. 1978). Moreover, there is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). Prison officials need only ensure a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. *Id.* at 351. Prison officials violate the Constitution only if they actually deprive a prisoner of the opportunity to present or prosecute a specific non-frivolous claim. *Id.* at 353.

Actual injury may result from a complaint prepared by a prisoner being "dismissed for failure to satisfy some technical requirement. " *Lewis v. Casey*, 518 U.S. at 351. Delay and inconvenience alone do not violate the Constitution. *Campbell v. Miller*, 787 F.2d 217, 229 (7th Cir. 1986). Mr. Smith does not allege that lack of access to the law library resulted in

5

his losing legitimate claims, because of the statute of limitations or for any other reason. Indeed, that he has been able to file this handwritten complaint suggests that he has not been denied access to the courts.

In Count XI of his complaint, Mr. Smith alleges that while he was in the SMU, the defendants violated the Fourteenth Amendment's due process clause by subjecting him to "constant camera observation by both male and female correctional officers. Often when [he] was urinating and defecating, he would be subjected to lewd comments from female guards." (Complaint at p. 53). That Mr. Smith may have been under constant surveillance by female correctional officers states no claim upon which relief can be granted.

> A prison shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. We strike the balance in favor of institutional security, which we have noted is central to all other correctional goals. A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that a prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement. *Hudson v. Palmer*, 468 U.S. 517, 527 (1983) (citations, quotation marks, and brackets omitted).
> 
> Guards take control of where and how prisoners live; they do not retain any right to seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life. After *Wolfish* and *Hudson*, monitoring of naked prisoners is not only permissible . . . but also sometimes mandatory.
> 
> * * *
> 
> Surveillance of prisoners is essential as *Wolfish* establishes. Observation of cells, showers, and toilets is less intrusive than the body-cavity inspections *Wolfish* held permissible. Guards do the surveillance. Male guards and female guards too . . . see prisoners in states of undress. Frequently. Deliberately. Otherwise they are not doing their jobs.

*Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995).

Mr. Smith alleges that female correctional officers made lewd comments to him; he specifically asserts that they asked him "'what's that stench' or 'wipe it good.'" (Complaint at p. 53). There is, however, "a *de minimis* level of imposition with which the Constitution is not concerned," *Ingraham v. Wright*, 430 U.S. 651, 674 (1977), and verbal abuse and harassment are not sufficient to state a claim under § 1983. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Oltarzewksi v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987). These correctional officers may have been unprofessional in making comments such as those described above, but their actions did not violate any Constitutional provision.

In Count XII of his complaint, Mr. Smith alleges that the defendants confiscated a $50.00 money order and a copy of a magazine from him without due process. The Fourteenth Amendment's due process clause provides that the states shall not "deprive any person of life, liberty, or property, without due process of law," but there is no loss of property without due process of law if a state provides an adequate post-deprivation remedy for the loss. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Hudson v. Palmer*, 468 U.S. 517 (1984). The Indiana tort claims act provides a sufficient remedy for loss of personal property. *Hossman v. Spradlin*, 812 F.2d 1019, 1023 (7th Cir. 1987); *Wilson v. Civil Township of Clayton*, 839 F.2d 375 (7th Cir. 1988).

Mr. Smith alleges that he was in disciplinary segregation between April 13, 2003 and February 13, 2004. In Counts XIV, XV, XVI, and XVII of his complaint, he asserts that during this period the defendants deprived him of adequate recreation, adequate ventilation, and proper lighting, and that he was required to eat from "filthy, food encrusted food trays," (Complaint at p. 55), which contaminated his meals. "Fed. R. Civ. P. 8 establishes a system of notice pleading," and a complaint may not be dismissed at the pleadings stage "unless no relief could be granted 'under any set of facts that could be

7

proved consistent with the allegations.'" *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998), *quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Giving Mr. Smith the benefit of the inferences to which he is entitled at the pleadings stage, the court cannot say no relief could be granted under any set of facts that could be proved consistent with his conditions of confinement claim for the period of time he was in disciplinary segregation.

Upon his release from disciplinary segregation, prison officials placed Mr. Smith in administrative segregation. In Count XVIII of his complaint, he alleges that the defendants deprived him of procedural due process because they did not conduct a hearing before placing him in administrative segregation. This allegation states no claim upon which relief can be granted because Mr. Smith has no liberty interest in being in general population, and segregating a convicted felon without process does not violate the Fourteenth Amendment's due process clause. *Sandin v. Conner,* 515 U.S. at 484.

At one time, *Hewitt v. Helms*, 459 U.S. 460 (1983), provided state prisoners a right to due process before being placed in administrative segregation if the state had established that administrative segregation would not occur absent a substantive predicate. But this holding of *Hewitt v. Helms* was abrogated by *Sandin v. Conner,* 515 U.S. at 484, which "'shift[ed] the focus of the liberty interest inquiry' from 'the language of a particular regulation' to 'the nature of the deprivation.'" *Hatch v. District of Columbia*, 184 F.3d 846, 851 (D.C.Cir. 1999), quoting *Sandin v. Conner,* 515 U.S. at 481.

Under *Sandin v. Conner*, a prisoner is entitled to due process before being segregated from general population only where the conditions imposed work an atypical and significant hardship on him in relation to the ordinary incidents of prison life or where the discipline imposed infringed on rights protected by the due process clause of its own force. Transferring a prisoner from the general population to a segregation unit,

8

or transferring him from disciplinary segregation to administrative segregation, does "not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest," and is "within the expected parameters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. at 485.

In Count XIX of his complaint, Mr. Smith alleges that the conditions in the administrative segregation are nearly identical to those in disciplinary segregation, in violation of the Fourteenth Amendment's due process clause. But there is no requirement that conditions be different in administrative and disciplinary segregation. Subject only to Eighth amendment restrictions, "a state can confine a prisoner as closely as it wants, in solitary confinement if it wants." *Smith v. Shettle*, 946 F.2d 1250, 1252 (7th Cir. 1991).

In Counts XX, XXII, and XXIII of his complaint, Mr. Smith alleges that while he has been housed in the administrative segregation unit, the defendants have deprived him of adequate recreation and adequate ventilation and lighting, and that he was still required to eat from filthy and contaminated food trays. Giving Mr. Smith the benefit of the inferences to which he is entitled at the pleadings stage, the court cannot say no relief could be granted under any set of facts that could be proved consistent with his conditions of confinement claim for the period he has been in administrative segregation.

In Count XXIV of his complaint, Mr. Smith alleges that there are fire safety problems on the administrative segregation unit because there have been no fire drills and correctional officers would have to manually unlock all thirty-three cells in the event of a fire.  These allegations, however, are insufficient to establish that the defendants "acted with even the minimum level of culpability sufficient to trigger the Eighth Amendment's protection against cruel and unusual punishment, deliberate indifference." *McNeil v. Lane*, 16 F.3d 124, *citing Helling v. McKinney*, 113 S.Ct. 2475, 2480 (1993); *Duane v. Lane*, 959 F.2d

673, 676 (7th Cir. 1992). "Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment. To state a claim under the Eighth Amendment, McNeil must, at minimum, allege facts sufficient to establish that the defendants possessed a total unconcern for McNeil's welfare in the face of serious risks." *McNeil v. Lane*, 16 F.3d at 124 (citations omitted.) As in *McNeil v. Lane,* Mr. Smith's allegations of fire safety problems "are insufficient to establish that the defendants acted maliciously, intending to punish or injure him," *Id.* at 124.

Mr. Smith names IDOC Commissioner Evelyn Ridley-Turner, ISP Superintendent Cecil Davis, and ISP investigator Charles Whelan as defendants. Section 1983 creates a cause of action for damages based on personal liability; a plaintiff must show the defendant's personal involvement or participation, or direct responsibility for the conditions of which he complains. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to § 1983 actions. *Zimmerman v. Tribble*, 226 F.3d 568 (7th Cir. 2000); *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993); *Adams v. Pate*, 445 F.2d 105, 107 (7th Cir. 1971).

As IDOC Commissioner, defendant Ridley-Turner had insufficient direct personal involvement in the day-to-day operation of the ISP's segregation units to remain as a defendant and she is not necessary for injunctive relief purposes. The only claims Investigator Whelan was involved in are being dismissed. Accordingly, the court will allow Mr. Smith to proceed only against ISP Superintendent Cecil Davis.

For the foregoing reasons, the court:

(1) **GRANTS** the plaintiff leave to proceed against defendant Cecil Davis in his individual capacity for damages and in his official capacity for declaratory and injunctive

relief on the conditions of confinement claims contained in Counts XIV, XV, XVI, XVII, XX, XXII, and XXIII, of the complaint;

(2) **DISMISSES**, pursuant to 28 U.S.C. § 1915A(b)(1), defendants Evelyn Ridley-Turner and Charles Whelan, and **DISMISSES** the claims contained in Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XVIII, XIX, XXI, and XXIV of the complaint;

(3) Pursuant to 42 U.S.C. § 1997e(g)(2), **ORDERS** defendant Davis to respond to the complaint as provided for in the Federal Rules of Civil Procedure; and

(4) **DIRECTS** the marshals service to effect service of process on Cecil Davis, and **DIRECTS** the clerk's office to ensure that a copy of this order is served on him along with the summons and complaint.

**SO ORDERED.**

**Enter**: September 19, 2005

            ___s/James T. Moody_____
            JUDGE JAMES T. MOODY
            UNITED STATES DISTRICT COURT